IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cr-188-FDW-DSC-2 |
| | ) | |
| ALAN BOYD DONTA BARNETT | ) | |
| a/k/a "Big Al" | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

NOW COMES the United States of America, by and through its attorneys, R. Andrew Murray, United States Attorney for the Western District of North Carolina, submits this response in opposition to Defendant's Motion for Compassionate Release. ECF No. 1179 (the "Motion").

## PRELIMINARY STATEMENT

The novel coronavirus, or COVID-19, is spreading broadly amongst the U.S. population, including among members of the public, health-providers, law-enforcement officers, people who produce and deliver essential products, and those who carry out the functions of the federal, state, and local government. The Defendant has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying on the threat posed by the COVID-19 pandemic. The United States respectfully opposes the Motion. This Court should deny the motion without prejudice for the Defendant's failure to exhaust administrative remedies. Should the Court reach the merits, this Court should deny the Motion with prejudice because the Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute. This Court should also deny Defendant's alternative request for an order directing BOP to transfer him to home confinement. Using

1

compassionate release in his case would fail to address a range of important practical and legal problems and would not satisfy the standards in § 3582(c)(1)(A).

## FACTUAL BACKGROUND

On November 6, 2013, a jury found the Defendant guilty of conspiring to further a racketeering enterprise, the United Blood Nation ("UBN"), conspiring to commit murder in aid of racketeering, two counts of conspiring to commit robbery in violation of the Hobbs Act, conspiring to possess with intent to distribute crack cocaine, using a telephone to facilitate a drug-trafficking offense, and distribution of crack cocaine. ECF. No. 929. The Defendant was sentenced by this Court to 360 months of imprisonment. ECF No. 964. The Defendant is currently scheduled for release on December 7, 2037. *See* Attachment 3 (Inmate Data), at 3. He now moves under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP), relying on the threat posed by the COVID-19 pandemic.

## I. BOP's Response to the COVID-19 Pandemic

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012),

2

available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control ("CDC"), including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training.

All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

4

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020 and April 3, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On March 26, 2020 and April 3, 2020, the Attorney General has directed that the BOP prioritize transferring inmates to home come confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors – particularly those at the facilities that thus far have seen the greatest incidence of coronavirus transmission. In addition, the BOP is devoting all available resources to executing on that directive. BOP is further devoting all available resources to assessing which inmates would be appropriate for transfer under BOP's priority home

confinement program and then to process those inmates for transfer as quickly as possible. As of this filing, BOP has transferred 7,276 inmates to home confinement.[1]

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

---

[1] Federal Bureau of Prisons, COVID-19 Home Confinement Information, at https://www.bop.gov/coronavirus/ (last accessed August 5, 2020).

6

**II.    The Defendant's Conviction and Request for a Sentence Reduction**

On May 16, 2012, a federal grand jury indicted the Defendant, along with 26 of his fellow UBN members, charging them with participation in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  ECF No. 2.  The grand jury alleged that the Defendant and his fellow UBN members conspired to further the UBN through a pattern of acts that included murder, bribery, robbery, and drug trafficking.  *Id.*  The grand jury also alleged numerous overt acts taken in furtherance of the UBN, including acts taken by the Defendant.  *Id.*  The grand jury also charged the Defendant with conspiring to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), conspiring to commit robbery in violation of the Hobbs Act, in violation of 18 U.S.C. § 1951, conspiring to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), using a telephone to facilitate a drug-trafficking offense, in violation of 21 U.S.C. § 843(b), and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1).  *Id.*

On November 6, 2013, a jury found the Defendant guilty of all charges.  As set forth in the trial, the Defendant "was the second highest ranking member of the G-Shine set in North Carolina" where he conspired to commit acts of violence and drug trafficking.  *United States v. Barnett,* 660 Fed.Appx. 235, 238 (4th Cir. 2016). On November 17, 2014, the Defendant was sentenced by the Court to 360 months of imprisonment.  ECF No. 946.  The Defendant is currently serving his sentence in the custody of the Bureau of Prisons ("BOP") at Butner Complex in North Carolina ("FCC Butner") and is specifically housed at Federal Medical Center ("FMC Butner").  *See* Attachment 2 (Inmate Profile).[2]

---

[2] Per the Butner Legal Center, the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"), is a federal prison complex that houses five separate institutions: a Federal Medical Center ("FMC Butner" or "FMC"), two medium Federal Correctional Institutions ("FCI

7

On July 17, 2020, the Defendant filed the instant *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 1179. In the Motion, the Defendant claims he is susceptible to COVID-19 due to being an African American male and that he is more prone to get the cold and the flu. *Id.* As of July 29, the Defendant has not filed an administrative request for release with BOP. The Government concedes that FCC Butner has been particularly hard hit by the coronavirus at this time.[3] But where the Defendant is currently housed, FMC Butner has had 6 confirmed cases among the inmates, 4 confirmed cases among the staff members, 0 inmates deaths, 0 staff deaths, 5 inmates have recovered, and 16 staff have recovered.[4]

According to BOP, the Defendant has not been considered for home confinement because he does not meet the necessary criteria. Namely, BOP has rejected home confinement for the Defendant because he not a suitable candidate. The Defendant is a Medium security inmate and has a PATTERN score of Medium recidivism risk.

## LEGAL FRAMEWORK

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to

---

Butner I" or "FCI I", and "FCI Butner II" or "the FCI II"), a Low Security Institution ("LSCI Butner" or "LSCI"), and a federal prison camp, ("the Camp", "FPC Butner", or "FPC").
[3] BOP, *COVID-19/Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed August 5, 2020).
[4] BOP, *COVID-19/Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed August 5, 2020).

8

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30

days have passed "from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of

imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds,

as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and

(ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish

that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th

Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of

sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court

may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds

that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a

danger to the safety of any other person or to the community, as provided in 18 U.S.C.

§ 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[5]

The policy statement includes an application note that specifies the types of medical

conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if

---

[5] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

9

the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care
>
> within the environment of a correctional facility and from which he or she is not
>
> expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## <u>ARGUMENT</u>

This Court should deny the Defendant's Motion for a reduction in his sentence without prejudice because he has failed to exhaust administrative remedies. Should the Court reach the merits of his Motion, the Court should deny it with prejudice on either of two independently sufficient grounds. First, the Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, the Defendant has not met his burden to show that a reduction is warranted in light of the danger that the Defendant would pose to the community and the relevant § 3553(a) factors. In addition, this Court lacks statutory authority to grant the Defendant's alternative request to direct BOP to transfer him to home confinement.

**I.     This Court Should Deny the Motion Without Prejudice Because the Defendant Has Not Exhausted Administrative Remedies.**

This Court lacks authority to act on Defendant's motion for a sentence reduction at this time.  As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court.  That restriction is mandatory, and it continues to serve an important function during the present crisis.  The government is very mindful of the concerns created by COVID-19, and BOP is making its best effort both to protect the inmate population and to address the unique circumstances of individual inmates.

Section 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." § 3582(c)(1)(A). Contrary to the Defendant's assertion, the requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court.  As the Third Circuit recently confirmed, where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  The vast majority of district courts to address this issue agree. *See, e.g.*, *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (citing numerous cases).  "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

11

be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only if authorized by statute. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Consistent with that principle of finality, § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (i) upon a motion for reduction in sentence under § 3582(c)(1)(A), such as that presented by the defendant; (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," § 3582(c)(1)(B); and (iii) where the defendant was sentenced "based on" a retroactively lowered sentencing range, § 3582(c)(2).

Given the plain language and purpose of the statute, the requirements for filing a sentence-reduction motion—including the requirement that a defendant exhaust administrative remedies or wait 30 days before moving in court for a reduction—are properly viewed as jurisdictional. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. 18 U.S.C. § 3582(c). It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511

12

U.S. 244, 274 (1994) (internal quotation marks omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered. *See United States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970). Section 3582(c) accordingly has been understood as conferring the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.[6]

In recent years, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, and explained that a statutory claim-processing rule, even if mandatory, is presumed to be nonjurisdictional absent a clear statement to the contrary. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848-50 (2019). A prescription is not jurisdictional merely because "it 'promotes important congressional objectives,'" *id*. at 1851 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)), and courts should not deem jurisdictional rules that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). But whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson*, 562 U.S. at 436. Here, the relevant factors indicate that § 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district

---

[6] The Fifth Circuit has recognized that the prerequisites for relief under § 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional. *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam).

13

court lacks jurisdiction to consider a motion for a sentence reduction where the defendant has failed to satisfy the exhaustion requirement of § 3582(c)(1)(A).[7]

While the government maintains that the time limitation in § 3582(c)(1)(A) is jurisdictional, given that it stands as an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment, the point is ultimately academic. Even if the exhaustion requirement of § 3582(c)(1)(A) is not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and it must be enforced.[8]

The Defendant has not any administrative requests with BOP to be released. In his Motion, Defendant does not mention or acknowledge that he has failed to exhaust his administrative requirements under § 3582(c)(1)(A). He nevertheless thinks that the Court should ignore the exhaustion requirement in light of the crisis presented by the coronavirus pandemic. That is incorrect. While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command such as that presented in § 3582(c)(1)(A). *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"). Indeed, the Supreme Court recently reaffirmed

---

[7] Although we use the term "exhaustion requirement," to be clear, an inmate need not "exhaust" administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden.

[8] Indeed, even those courts that have concluded that the requirements of § 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (recognizing that even if a court has the "power to adjudicate" a motion under § 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

14

that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which it rejected a judicially created "'special circumstances'" exception to a statutory exhaustion requirement. Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856.

Some have suggested that the exhaustion requirement of § 3582(c)(1)(A) may be excused by a court as "futile" during the present pandemic. But there is no "futility" exception, as the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement. Two district courts have recently rejected the argument that any such futility exception exists under § 3582. *See United States v. Holden*, 2020 WL 1673440, at *5 (D. Or. Apr. 6, 2020); *United States v. Eberhart*, 2020 WL 1450745, at *1 (N.D. Cal. Mar. 25, 2020). While a few district courts have incorrectly excused the § 3582 exhaustion requirement as futile, two of those decisions have rested on the fact that the defendant had a matter of days left to serve on the sentence, a consideration not present in this case. *See United States v. Colvin*, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (finding exhaustion futile because inmate had 11 days left on her sentence); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (finding exhaustion futile because inmate had less than 21 days left on his sentence and was recovering from two vicious beatings while in prison); *but see United States v. Zukerman*, 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020) (finding exhaustion futile where obese, 75-year old inmate suffered from diabetes and hypertension). At least one of those decisions incorrectly relied on precedent addressing a judicially created—as opposed to statutorily created—

15

exhaustion requirement. *See Perez*, 2020 WL 1546422 at *2 (relying only on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)).[9] And in any event, a request in this context is not futile, because, as explained further below, BOP fully considers requests for sentence reductions. Indeed, BOP often concurs with such requests. During the period from the passage of the First Step Act on December 21, 2018, until mid-March 2020 (before the coronavirus crisis began), BOP consented to a reduction in sentence in 55 cases. The requirement of a 30-day period to afford BOP the initial review of the defendant's request therefore cannot be excused.[10]

_____

[9] To the extent *Perez* also suggests that *Mathews v. Eldridge*, 424 U.S. 319 (1976), supports an exception to the exhaustion requirement here, *see* 2020 WL 1546422, at *2 n.2, that is incorrect. In *Eldridge*, the claimant complied with the "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 16 (2000). And while the Court in *Eldridge* recognized that a constitutional challenge "entirely collateral to [the claimant's] substantive claim of entitlement" might evade a statutory exhaustion requirement, 424 U.S. at 330, Defendant's claim for relief in this Court is the same claim he was required to present to BOP. *See also United States v. Demaria*, 2020 WL 1888910, at *3 & n.8 (S.D.N.Y. Apr. 16, 2020) (explaining the *Perez* error at length and the inapplicability of the cases on which it relied).

[10] A handful of courts, mostly in the Second Circuit, have agreed with *Perez* that the exhaustion requirement may be negated. *See also, e.g.*, *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (11 days remaining on sentence); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020) (26 days remaining on sentence); *United States v. Ben-Yhwh*, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020); *United States v. Zukerman*, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020); *United States v. Paciullo*, 2020 WL 1862252, at *2 (S.D.N.Y. Apr. 14, 2020) (court strikes a "compromise" and allows BOP 20 days); *United States v. Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United States v. Smith*, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020).
     A number of other district courts in the Second Circuit disagree, while virtually every other district court in the country to consider this issue in a reported decision agrees with *Raia* and the government here that the 30-day requirement must be enforced. *See, e.g.*, *United States v. Gillis*, 2020 WL 1846792 (C.D. Cal. Apr. 9, 2020); *United States v. Meron*, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020); *United States v. Hembry*, 2020 WL 1821930 (N.D. Cal. Apr. 10, 2020); *United States v. Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020); *United States v. Perry*, 2020 WL 1676773 (D. Colo. Apr. 3, 2020); *United States v. Zywotko*, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020); *United States v. Read-Forbes*, 2020 WL 1888856 (D. Kan. Apr. 16, 2020); *United States v. Boyles*, 2020 WL 1819887 (D. Kan. Apr. 10, 2020); *United States v. Carter*, 2020 WL 1808288 (S.D. Ind. Apr. 9, 2020); *United States v. Hofmeister*, 2020 WL

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And this is for good reason: BOP conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A)

---

1811365, at *3 (E.D. Ky. Apr. 9, 2020) (explaining that the rule is jurisdictional, and perhaps even more necessary during COVID-19 crisis); *United States v. Reeves*, 2020 WL 1816496 (W.D. La. Apr. 9, 2020); *United States v. Lugo*, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020) (extensive analysis, concluding, "The Court regards the language of section 3582(c) as both clear and mandatory."); *United States v. Johnson*, 2020 WL 1663360, at *3-*6 (D. Md. Apr. 3, 2020) (concluding in lengthy discussion that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and, regardless, there are no exceptions to the exhaustion requirement); *United States v. Underwood*, 2020 WL 1820092 (D. Md. Apr. 10, 2020); *United States v. Carden*, 2020 WL 1873951 (D. Md. Apr. 15, 2020); *United States v. Alam*, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020); *United States v. Mathews*, 2020 WL 1873360 (E.D. Mich. Apr. 15, 2020); *United States v. Annis*, 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (Tunheim, C.J.) ("There is no question that COVID-19 is a cause for alarm, and the Court does not fault Annis's concerns, given his health conditions. However, given the scale of the COVID-19 pandemic and the complexity of the situation in federal institutions, it is even more important that Annis first attempt to use the BOP's administrative remedies."); *United States v. Gardner*, 2020 WL 1867034 (D. Minn. Apr. 14, 2020); *United States v. Eisenberg*, 2020 WL 1808844 (D.N.H. Apr. 9, 2020); *United States v. Ogarro*, 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020) (lengthy analysis, stating, "In fact, section 3582(c)'s exhaustion proscription is clear as day."); *United States v. Pereyra-Polanco*, 2020 WL 1862639 (S.D.N.Y. Apr. 14, 2020); *United States v. Roberts*, 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020); *United States v. Woodson*, 2020 WL 1673253 (S.D.N.Y. Apr. 6, 2020); *United States v. Weiland*, 2020 WL 1674137 (S.D.N.Y. Apr. 6, 2020); *United States v. Rabadi*, 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020) (follows "vast majority" of courts); *United States v. Schultz*, 2020 WL 1872352 (W.D.N.Y. Apr. 15, 2020); *United States v. Allen*, 2020 WL 1878774 (N.D. Ohio Apr. 15, 2020); *United States v. Simmons*, 2020 WL 1903281 (D. Or. Apr. 17, 2020); *United States v. Holden*, 2020 WL 1673440 (D. Or. Apr. 6, 2020) (very extensive discussion); *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (cites numerous cases in agreement); *United States v. Petrossi*, 2020 WL 1865758 (M.D. Pa. Apr. 14, 2020); *United States v. Feiling*, 2020 WL 1821457 (E.D. Va. Apr. 10, 2020); *United States v. Fuller*, 2020 WL 1847751 (W.D. Wash. Apr. 13, 2020); *United States v. Carver*, 2020 WL 1604968 (E.D. Wash. Apr., 1, 2020); *United States v. Fevold*, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) ("Not only is exhaustion of administrative remedies required as a matter of law, but it also makes good policy sense. The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the facility's ability to mitigate those risks and provide for the care and safety of the inmates.").

and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, the BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

That is especially true during the current crisis. As explained above, BOP must balance a host of considerations in deciding whether to release an inmate to recommend a reduction in an inmate's sentence or grant the inmate home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit has held, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597. *See also United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important.").

Accordingly, Defendant's motion should be denied without prejudice to refiling once he has exhausted administrative remedies.

## II.    Should The Court Reach The Merits, It Should Deny The Motion Because the Defendant Has Failed to Present Any "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction and Because He Poses a Danger to Public Safety.

Even if this Court had authority to grant Defendant's motion for a reduction of his sentence, it should be denied for two reasons. First, the Defendant has not identified "extraordinary and compelling reasons" for that reduction within the meaning of § 3582(c)(1)(A)

18

and the Sentencing Commission's policy statement. Second, the Defendant poses a significant danger to the public and the statutory sentencing factors do not weigh in favor of his release.

### A. The Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

The Defendant's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020);; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[11]  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

This Defendant has not identified a medical condition that falls within one of the categories specified in the policy statement's application note.  In his motion, the Defendant claims his ethnicity and his susceptibility to the cold and flu as conditions for his early release. But the defendant does not assert that BOP is failing to adequately treat these conditions or that BOP is incapable of doing so.  And in any case, the defendant's medical conditions do not rise to the level of severity required under the policy statement.

---

[11]  *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

Although the Defendant fails to attach to his motion any medical records supporting his claim, the medical records the United States received from BOP from the last year makes it clear that BOP is adequately treating all his health conditions, which includes his skin condition and the complications that resulted from his Achilles surgery. And, the Defendant's medical records note on June 29, 2020 that "he has refused the flu shot regularly." *See* Attachment 1 (BOP Medical Records from July 28, 2019 to July 28, 2020), at 8. This action is not consistent with his present assertion that COVID-19 justifies his release because in his words, "[f]or one reason or another, I seem to catch a cold or the flu quite easily." ECF No. 1179 at 1.

Second, the Defendant has not identified any medical condition that falls within one of the categories specified in the policy statement's application note.

Third, the Defendant is forty-five years old, and thus is not subject to age-based COVID-19 risk factors.

Fourth, though FCC Butner has been particularly hard hit by the coronavirus, FMC Butner has had 6 confirmed cases among the inmates, 3 confirmed cases among the staff members, 0 inmates deaths, 0 staff deaths, 6 inmates have recovered, and 16 staff have recovered as of August 5, 2020, according to the Bureau of Prisons COVID-19 information website. Thus, the Defendant's incarceration in that facility provides no higher risk of COVID-19 infection. Relatedly, the Defendant has not established that he would be less vulnerable to COVID-19 if he were released to the Gastonia, North Carolina area.

At the present time, it is apparent that, but for the COVID-19 pandemic, the Defendant would present no basis for compassionate release. Any of his possible medical ailments are well-controlled and do not present any impediment to his ability to provide self-care in the institution. Accordingly, because the defendant has failed to establish an "extraordinary and compelling

21

reason" for a sentence reduction under § 3582(c), the Court should deny his motion with prejudice.[12]

**B. The Defendant Still Poses a Significant Danger to the Safety of the Community and the § 3553(A) Factors Strongly Weigh Against His Release.**

Alternatively, the Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

The Defendant would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone. The Defendant, a documented leader in the UBN, presents a public safety risk if released based on the seriousness of his crimes and his criminal history. The Defendant was convicted for his involvement in the UBN, a violent criminal street

---

[12] *See, e.g.*, *United States v. Greenhut*, 2019 WL 6218952 (C.D. Cal. Nov. 21, 2019) (skin cancer and lesions for which the defendant is receiving effective treatment; the deterioration of his businesses during incarceration; and his desire to be present in the life of his 13-year-old child are not extraordinary circumstances); *United States v. Bunnell*, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (the defendant has "serious medical issues" – he "suffers from arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair – but none of these are terminal illnesses or substantially diminish his ability to provide self-care within the environment of a correctional facility); *Cannon v. United States*, 2019 WL 5580233, at *3 (S.D. Ala. Oct. 29, 2019) (the 71-year-old defendant suffers from significant back and stomach issues, as well as high blood pressure, diabetes, skin irritation, loss of hearing, and various other complications, but relief is denied: "First, there is no indication that Cannon is terminally ill. Second, despite the many medical afflictions Cannon identifies, he does not state, much less provide evidence, that his conditions/impairments prevent him from providing self-care within his correctional facility. Rather, the medical records provided by Cannon show that his many conditions are being controlled with medication and there is no mention that his conditions are escalating or preventing him from being from being able to provide self-care.").

22

gang.  His convictions included RICO conspiracy, conspiring to commit murder and rob and distribute crack cocaine.  In his Motion, the Defendant stated "I was convicted of a non-violent crime in 2012"  ECF No. 1179.  The government respectfully disagrees and will defer to the jury's verdict because it completely contradicts the Defendant's assertion.  In addition, the Defendant has a significant criminal history where the computation score was a 17.  ECF No. 929 at 25.  His convictions include a 1994 conviction for Conspiracy to Commit Robbery with a Dangerous Weapon; a 1997 conviction for Possession of Cocaine; a 1997 conviction for two counts of Common Law Robbery; a 1999 conviction for First Degree Burglary, Robbery with a Dangerous Weapon, Carrying a Concealed Weapon, Possession of Firearm by Felon, Habitual Felon; and a 2008 conviction for Possession of a Firearm by Felon.  *Id.* at 22-25.  The Defendant was sentenced to 360 months of imprisonment and has only served 27.3 percent of the full term. The Defendant should remain in BOP custody to serve the remainder of his sentence.  *See* Attachment 3 (Inmate Data), at 3.  Given the seriousness of the crime of conviction, the amount of the total sentence which has been served, and the remaining § 3553(a) factors under consideration, the Defendant's release is strongly disfavored.

## CONCLUSION

For these reasons, this Court should deny Defendant's motion for a sentence reduction without prejudice for failure to exhaust administrative remedies or, in the alternative, deny the motion on the merits with prejudice.

RESPECTFULLY SUBMITTED, this the 5th day of August, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**//s// Christopher S. Hess**
Assistant United States Attorney
NC Bar Number: 27890
United States Attorney's Office
23

227 West Trade Street, Suite 1700
Charlotte, North Carolina 28202
Telephone: 704-344-6222
E-mail: Christopher.Hess@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on this 5th day of August 2020, the foregoing document was mailed via first class mail upon Alan Barnett at the following addresses:

      Alan Barnett
      27497058
      FMC Butner
      P.O. Box 1600
      Butner, NC  27509

                R. ANDREW MURRAY
                UNITED STATES ATTORNEY

                **<u>//s// Christopher S. Hess</u>**
                CHRISTOPHER S. HESS
                ASSISTANT UNITED STATES ATTORNEY